**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

|  |  |  |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
|  | : | **Demand for Jury Trial** |
| v. | : | |
|  | : | Case No.  22-195 |
| MCCLUSKEY INSURANCE, LLC, KEITH | : | |
| CAMERON MCCLUSKEY, TERRY MAPLES, | : | |
| LUIS ABREGO, and SHANNA LONG. | : | |
|  | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF**

Plaintiff Allstate Insurance Company ("Allstate"), by and through its undersigned attorneys, alleges as follows for its Verified Complaint against McCluskey Insurance, LLC ("McCluskey Insurance"); Keith Cameron McCluskey ("McCluskey"); Terry Maples ("Maples") Luis Abrego ("Abrego") and Shanna Long ("Long") (collectively "Defendants"):

**NATURE OF THE ACTION**

1.      This action arises from Defendants blatant and intentional breaches of their Agreements with Allstate as well as their misappropriation of Allstate trade secrets.

2.       Specifically, McCluskey executed an "Allstate R3001C Exclusive Agency Agreement" effective August 1, 2015 and an "Allstate R3001D Exclusive Agency Agreement" ("EA Agreements") as the key person on behalf of McCluskey Insurance, effective March 1, 2019 (attached as <u>Group Exhibit A</u>).  He also executed Confidentiality and Non-Competition Agreements ("Confidentiality Agreement") with Allstate on August 1, 2015 and March 1, 2019 (attached as <u>Group Exhibit B</u>).

3.    Defendants Maples, Abrego and Long also executed Confidentiality Agreements with Allstate on May 8, 2017, December 2, 2021, and November 13, 2019, respectively. (attached as Exhibits C,  D, and E).

4.    The EA Agreement allowed McCluskey Insurance to operate as an Allstate Exclusive Agency and for McCluskey to become an independent Exclusive Allstate Agent and to sell and receive monies from Allstate products and services (jointly, "products").  The Confidentiality Agreement allowed McCluskey, Maples, Abrego and Long to assume employment at McCluskey Insurance's Exclusive Agency (the "McCluskey Allstate Agency"), and to assist the McCluskey Allstate Agency in marketing and selling Allstate products.

5.    Under the EA Agreement and the Confidentiality Agreement (collectively, "Allstate Agreements"), Defendants agreed that, for one year following the termination of their relationship with Allstate, they would not solicit Allstate customers that they sold Allstate products to or whose identity they discovered as a result of (1) their relationship with Allstate and/or (2) their access to Allstate confidential information and who were Allstate customers at the time the Allstate Agreements terminated.

6.    Defendants also agreed that for one year following the termination of the relationship with Allstate they would not sell products that compete with Allstate "from any office or business site located within one mile of any locations from which the [McCluskey Allstate] Agency solicited or sold [Allstate] insurance" in the year immediately preceding the termination.

7.    The Allstate Agreements further required Defendants to acknowledge that they would be granted access to Allstate confidential information, that Allstate confidential

information is the property of Allstate, and that they would not disclose to any third party or permit any third party to access Allstate confidential information.

8.      Upon termination of their relationships with Allstate, Defendants all agreed to (1) return to Allstate all Allstate property, including Allstate confidential information; (2) immediately stop representing themselves as being affiliated with Allstate; and (3) cease using Allstate service marks and trade names.

9.      Allstate trusted Defendants to abide by the post-employment terms of the Allstate Agreements and to only use Allstate confidential information for the benefit of Allstate.

10.     After insisting that Allstate allow Defendants McCluskey and Maples to merge two very large Allstate books of business into one, on September 30, 2021, McCluskey suddenly and shockingly notified Allstate that he was terminating his and McCluskey Insurance's relationship with Allstate and taking Allstate's termination payment ("TPP") effective December 31, 2021.

11.     On or about December 31, 2021, McCloskey Insurance's EA Agreement and its relationship with Allstate terminated.  At the same time McCloskey, Maples, Abrego and Long terminated their relationships with Allstate.

12.     Unbeknownst to Allstate, between September and December 2021, Defendants worked to register McCluskey Insurance Services, LLC with the State of Ohio and obtained appointment from several non-Allstate insurance carriers.  They did this so that upon terminating their relationship with Allstate in December 2021, they could immediately open a competing insurance agency, McCluskey Insurance Services LLC, in the exact same location as their former Allstate agency, the McCluskey Allstate Agency.

13.     On December 31, 2021, the last date operating the McCluskey Allstate Agency, Defendants used Allstate's proprietary database and confidential information to send an email to several (if not all) of their Allstate customers advertising their new competing agency.

14.     Not only are Defendants operating a competing business out of the same location in violation of their Allstate Agreements, upon information and belief, Defendants and other staff improperly downloaded and took Allstate confidential information, including Allstate customer information and have used, and are continuing to use, Allstate confidential information, as well as other marketing efforts, to directly solicit Allstate customers to purchase competing products from McCluskey Insurance Services LLC.

15.     Defendants' actions are clear violations of the Allstate Agreements. Defendants' conduct also constitutes misappropriation of trade secrets, tortious interference and unfair competition with Allstate's contractual and business relationships.

16.     Consequently, Allstate now brings suit against McCluskey Insurance and McCluskey for breach of the EA Agreement, against McCluskey, Maples, Abrego and Long for breach of the Confidentiality Agreement, and against all Defendants for misappropriation of trade secrets, tortious interference, and unfair competition. In doing so, Allstate requests that this Court permanently enjoin Defendants from continuing their knowing and intentional breaches of their Allstate Agreements and use of Allstate's trade secrets, and award Allstate compensatory and punitive damages for Defendants' intentional and illegal acts.

17.     Accordingly, Allstate respectfully requests that this Court enter an order (1) permanently enjoining Defendants from using, possessing, or having access to Allstate confidential information; (2) compelling Defendants to return to Allstate all Allstate property, including all Allstate confidential information, in their possession, custody, or control;

4

(3) compelling Defendants to stop operating a competing business out of a location within one mile of any of the Allstate locations in which they worked until January 1, 2023; (4) compelling Defendants to stop soliciting Allstate customers until January 1, 2023; (5) awarding Allstate compensatory and punitive damages for Defendants' intentional acts; and (6) awarding Allstate its reasonable attorneys' fees as provided for under the Allstate Agreements and applicable law.

## THE PARTIES AND RELEVANT PERSONS

18.     Allstate Insurance Company is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

19.     McCluskey Insurance, LLC is a limited liability corporation registered in the state of Ohio with its members all being citizens of the state of Ohio.

20.     McCluskey is a citizen of the State of Ohio.  Upon information and belief, McCluskey owns and operates the competing independent agency, McCluskey Insurance Services LLC.

21.     Terry Maples is a citizen of the State of Ohio.  Upon information and belief, Maples is an employee of or otherwise works for and performs services on behalf of McCluskey Insurance Services LLC.

22.     Luis Abrego is a citizen of the State of Ohio.  Upon information and belief, Abrego is an employee of or otherwise works for and performs services on behalf of McCluskey Insurance Services LLC.

23.     Shanna Long is a citizen of the State of Ohio.  Upon information and belief, Long is an employee of or otherwise works for and performs services on behalf of McCluskey Insurance Services LLC.

5

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction over the dispute, pursuant to 18 U.S.C.

§ 1836(c) and 28 U.S.C. 1331, because Allstate's claims against Defendants under the Federal

Defend Trade Secrets Act (18 U.S.C. §1836) raise a federal question.  Allstate's remaining

claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because

the claims are so related to the federal question that they form part of the same controversy.

25.     Alternatively, the Court has diversity jurisdiction under 28 U.S.C. § 1332(a)

because this action and controversy is between citizens of different states and exceeds the sum or

value of $75,000.00, exclusive of interest and costs.

26.     This Court has personal jurisdiction over Defendants because they are citizens

and residents of Ohio.  Venue is proper in the United States District Court for the Southern

District of Ohio, pursuant to 28 U.S.C. § 1391(b), because Defendants reside in this District, the

Allstate property Allstate seeks to be returned is located in this District, and a substantial part of

the events giving rise to Allstate's claims occurred in this District.

## BACKGROUND

### Allstate's Business and Appointment of Independent Exclusive Agents

27.     Allstate is one of the nation's leading providers of insurance products to

individuals and businesses.  Among other things, Allstate provides automobile insurance,

property and casualty insurance, and life insurance to individuals and businesses.

28.     In addition to providing these products directly, Allstate appoints independent

exclusive agents ("Exclusive Agents"), through its Exclusive Agency Program, to sell Allstate

products.

6

29.     Allstate rigorously screens its Exclusive Agents to ensure that the agents are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate insurance solutions.

30.     Allstate Exclusive Agents are also authorized to employ "Licensed Service Providers" ("LSPs") to assist the Exclusive Agents in performing services under the Allstate Agreements.

31.     Allstate expends substantial resources advertising, marketing and promoting its products.

32.     The Exclusive Agents and their LSPs benefit, directly and indirectly, from Allstate's advertising, marketing and promotional efforts, as well as from Allstate's goodwill, reputation and name recognition.  These efforts and expenditures allow the Exclusive Agents and their LSPs to develop and cultivate customer accounts and relationships on behalf of Allstate.

33.     Accordingly, Allstate relies heavily upon repeat business and renewal of policies to maintain its competitive advantage in the highly competitive insurance industry.  Maintaining goodwill and a solid business reputation with its customers and insureds is a critical component of Allstate's success.  Indeed, because Allstate's business is a service business, the relationship that each Exclusive Agent and its LSPs have with Allstate customers is highly dependent on the attention and excellent service given to the customers on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

**<u>Protection of Allstate Confidential Information</u>**

34.     Allstate and its customers entrust Allstate and its Exclusive Agents and the Exclusive Agents' LSPs to safeguard and protect their private information, which includes information relating to, among other things, their personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, description and location of

81030110v.2

assets and property, claims histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized use or disclosure.

35.     Allstate protects its information (described in paragraphs 34 and 48) by, among other things: limiting the disclosure and use of this information to only the Exclusive Agent and his or her LSPs who need this information to sell Allstate products; educating the Exclusive Agent and his or her LSPs about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring the use of passwords to access the information; and, as discussed below, requiring the Exclusive Agent and his or her LSPs to execute written agreements that protect against the misuse and improper disclosure of Allstate's confidential information.

36.     Consequently, all Exclusive Agents and their LSPs, pursuant to their Allstate Agreements and while performing services under the Allstate Agreements, acknowledge that they will have access to Allstate confidential information, promise to not disclose confidential information to anyone not authorized to receive it, and confirm that they will not use confidential information for their own benefit or for any improper purpose.

37.     Exclusive Agents and LSPs agree, upon termination of their relationship with Allstate, to continue treating Allstate confidential information as confidential, not disclose, either directly or indirectly, Allstate confidential information to any third party, and immediately return all Allstate confidential information to Allstate.

38.     Hence, Allstate's confidential and proprietary information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.

**Defendants Enter into Allstate Agreements to Solicit and Sell Allstate Products**

39.     After proceeding through Allstate's rigorous screening process to become an Exclusive Agent, McCluskey became an Exclusive Allstate Agent on or about August 1, 2015. (*See* EA Agreements, Gr. Ex. A).

40.     McCluskey operated an Exclusive Allstate Agency through McCluskey Insurance at 9673 Kings Auto Mall Rd. in Cincinnati, Ohio from August 1, 2015 through December 31, 2021.

41.     On August 1, 2017 and March 1, 2019, McCluskey also executed Confidentiality Agreements with Allstate.  (*See* Confidentiality Agreements, Gr. Ex. B).

42.     On or about May 8, 2017, Maples became an LSP for the McCluskey Allstate Agency after executing his Confidentiality Agreement.  (*See* Confidentiality Agreement, Ex. C).

43.     From May 8, 2017 to September 1, 2021, Maples operated a second location for the McCluskey Allstate Agency, known as McCluskey Insurance II LLC, located at 179 Commerce Dr, Loveland, OH 45140 under a separate agency number.

44.     On September 1, 2021, the two locations and the Allstate books of business serviced by those agencies merged.  Upon information and belief, Maples ran the day to day operations at McCluskey Insurance II LLC and the McCluskey Allstate Agency, following the merger.

45.     On or about November 13, 2019, Long became an LSP for the McCluskey Allstate Agency after executing her Confidentiality Agreement.  (*See* Confidentiality Agreement, Ex. D).

46.     On December 2, 2021, Abrego became an LSP for the McCluskey Allstate Agency after executing his Confidentiality Agreement.  (*See* Confidentiality Agreement, Ex. E).

47.     Prior to becoming an LSP in the McCluskey Allstate Agency, Abrego was an LSP in Exclusive Agents Victor Gray's and Don Block's Allstate Agencies, for which he also signed a Confidentiality Agreement with Allstate which terminated on or about August 1, 2021 and December 1, 2021, respectively.  (Confidentiality Agreements attached as <u>Group Exhibit F</u>).

48.     Under the Allstate Agreements, Defendants acknowledged that the following information is Allstate "confidential information" and property:

> business plans of [Allstate]; information regarding the names, addresses, and ages of policyholders; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by [Allstate] as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of [Allstate] that is not otherwise lawfully available to the public.  All such confidential information is wholly owned by [Allstate].

(EA Agreement, § IV(D); Confidentiality Agreement, ¶ 3).

49.     Pursuant to Section IV(D) of the EA Agreement and Section 4 of the Confidentiality Agreement, Defendants agreed that they would not, at any time or in any manner, directly or indirectly, use the information for any purpose other than to carry out the provisions of their Allstate Agreements.  (EA Agreement, § IV(D); Confidentiality Agreement, ¶ 4).

50.     Pursuant to Sections IV(D) and XVIII(B) of the EA Agreement, and Section 5 of the Confidentiality Agreement, Defendants acknowledged that all confidential information they were provided and had access to through Allstate would at all times remain Allstate property, and was to be returned to Allstate upon termination of their Allstate Agreements and relationship with Allstate.  (EA Agreement, §§ IV(D), XVIII(B); Confidentiality Agreement, ¶ 5).

51.     Pursuant to Section XIX(A) and (E) of the EA Agreement and Section 8 of the Confidentiality Agreement, Defendants agreed that immediately upon termination of their Allstate Agreements they would cease representing themselves as affiliated with Allstate or an Allstate representative, and cease using all Allstate services marks and trade names. (EA Agreement, §§ XIX(A) and (E); Confidentiality Agreement, ¶ 8).

52.     Pursuant to Section XVIII(D) of the EA Agreement and Section 7 of the Confidentiality Agreement, Defendants agreed that, for a period of one year following termination of their Allstate Agreements, they would not solicit the purchase of products competitive with those sold by Allstate from any customer who the McCluskey Allstate Agency sold Allstate products to or who they knew about from their affiliation with Allstate.  (EA Agreement, § XVIII(D); Confidentiality Agreement, ¶ 7).

53.     Defendants also agreed that for a period of one year following termination of their Allstate Agreement that they would not sell competing products from any office or business site located within one mile of any locations from which the McCluskey Allstate Agency solicited or sold Allstate insurance or other products or services during the year immediately preceding the termination.  (*Id.*)

54.     Defendants recognized that a breach of any of the provisions in their Allstate Agreements would "cause irreparable damage to [Allstate's] business and that such damage will be difficult or impossible to measure."  (EA Agreement, §§ IV(F), XVIII(F); Confidentiality Agreement, ¶ 10).

55.     Accordingly, Defendants agreed that if they breached any of the obligations under their Allstate Agreements, then Allstate would be "entitled to an order granting injunctive relief from any court of competent jurisdiction," in addition to other rights and remedies.  (*Id.*)

11

56.     Defendants also agreed that Allstate would be "entitled to an award of reasonable attorneys' fees in the event that [Allstate] is successful in an application for injunctive relief or in an action based upon the breach" of any of the terms set forth in their Allstate Agreements.  (*Id*.)

### Defendants Breach Their Allstate Agreements

57.     Just weeks after completing the merger of the two McCluskey books of business, on or about September 30, 2021, McCluskey gave Allstate notice that he was terminated the EA Agreements for McCluskey Insurance and his Confidentiality Agreements effective December 31, 2021.  (Notice attached as Exhibit G).

58.     Despite having 90 days to sell his economic interest in the Allstate book of business serviced by the McCluskey Agency ("Book of Business"), McCluskey notified Allstate that he did not wish to sell his economic interest and elected to take from Allstate what is known as a Termination Payment ("TPP"), which sells the economic interest back to Allstate.

59.     Payment of TPP is contingent upon, among other things, McCluskey complying with the restrictive covenants and confidentiality obligations contained in the EA Agreement.

60.     Unbeknownst to Allstate, McCluskey had already started the process of setting up a competing business, registering McCluskey Insurance Services, LLC with the Ohio Department of Insurance on October 27, 2021 and getting it appointed with seventeen different non-Allstate carriers, including, among others, Grange Insurance, Nationwide, Safeco, and Travelers. (Department of Insurance printout attached as Exhibit H).

61.     As of at least November 10, 2021, Defendants had new email addresses set up for their competing business.

62.     When a McCluskey Allstate Agency employee, Kelly Maples, sent Maples a spreadsheet entitled "Agent Database" containing the personal information for all of the

81030110v.2

McCluskey Allstate Agency employees, Maples responded "let's start using my

maplest@cmclusekey.com email."  (Email attached as Exhibit I).

63.     On December 31, 2021, before their last date as an Allstate agency, Defendants

accessed Allstate's confidential systems and used Allstate customer information to send a mass

email to Allstate customers informing them of their competing agency and advertising that they

"will be offering a broad array of insurance companies in 2022."   The letter was signed on

behalf of their new competing agency "McCluskey Insurance Services LLC."  (Email attached as

Exhibit J).

64.     After their relationships with Allstate terminated, Defendants, pursuant to the

Allstate Agreements, promised to: (a) immediately return all Allstate confidential information

and property to Allstate; (b) cease representing themselves as affiliated with Allstate; (c) cease

using Allstate services marks and trade names; (d) not solicit the purchase of products or services

in competition with Allstate to any customer of Allstate with whom they worked until after

January 1, 2023; and (e) not solicit or sell competing products or services from any office or

business site within one mile of where the McCluskey Allstate Agency operated until after

January 1, 2023.

65.     After termination of the Allstate Agreements, Defendants immediately opened

McCluskey Insurance Services, LLC in the exact same location as the McCluskey Allstate

Agency at 9673 Kings Auto Mall Rd. in Cincinnati, Ohio. (Screenshot of McCluskey Insurances

Services LLC showing address attached as Exhibit K).

66.     Upon information and belief, Defendants were operating McCluskey Insurance

Services, LLC at 9673 Kings Auto Mall Rd. before their Allstate Agreements terminated on

December 31, 2021.

67.     McCluskey Insurance Services, LLC sells products competitive to those offered by Allstate.  Put differently, McCluskey Insurance Services, LLC is an Allstate competitor.

68.     Allstate customers who visit 9673 Kings Auto Mall Rd. thinking it is still an active Allstate location will instead walk into a competing insurance agency and upon information and belief, are solicited by Defendants.

69.     Upon information and belief, after opening their competing agency, Defendants used Allstate confidential information to send a mass mailing to Allstate customers, soliciting their business to McCluskey Insurance Services LLC.

70.     Defendants are also targeting their former Allstate customers through social media sites such as Facebook.

71.     On March 6, 2022, Defendant Abrego has posted on his personal Facebook account a post stating:

> Hey FB friends and family, I have been in the insurance industry for a while now and had many great years with Allstate.  With all things changing, I am not an independent agent.  I work with many of the top rated companies in the nation.  The map is just the beginning for all areas I have clients and can sell insurance in.  If you area isn't listed yet, it will be in the coming months.
>
> I'm looking to save as many people on insurance as I can.  If you would like a free quote, let me know.  I'd love a chance to earn your business.

(Facebook screenshot attached as Exhibit L).

72.     Thereafter, Abrego posted substantially similar posts to his personal Facebook page at least two additional times.

73.     Upon information and belief, several Allstate customers follow Abrego on Facebook and Abrego knew that by posting the above comments on his Facebook feed he could directly reach several Allstate customers.

74.     Defendants are also calling Allstate customers to solicit their business.

14

75.     Allstate exclusive agents that are servicing the McCluskey Allstate Agency's Book of Business as well as Allstate exclusive agents for whom Abrego formerly worked have received several complaints and comments from customers that they are being solicited by Defendants' new competing independent agency.

76.     For example, on or around February 10, 2022, an Allstate customer called Allstate to cancel her auto and renters insurance and confirmed that Abrego had called her and solicited her business to Travelers.  (Transcript of the audio recording of the call attached as <u>Exhibit M</u>).

77.     Also in February 2022, another Allstate customer called an Allstate agency trying to return a phone call and to speak with "Shanna" in order to provide her payment information. Throughout the call it became clear that Abrego has solicited this client and was switching her insurance to a competing insurance carrier.  (Transcript of the audio recording of the call attached as <u>Exhibit N</u>).

78.     Also in February 2022, another Allstate customer called EA Kurt Hume to cancel her auto and renters Allstate policies explaining that Abrego had called her "out of the blue" and offered to get her better rates.  When this customer ultimately decided to stay with Allstate, Abrego called her again and tried to convince her not to stay with Allstate and to instead move her insurance to McCluskey Insurance Services LLC.

79.     Since January 1, 2022, about 100 policies have been terminated from the McCluskey Allstate Agency Book of Business, with half of those being lost in the month of March.

80.     Additionally, EA Gray has been rapidly losing customers from his Allstate book of business that were previously serviced by Abrego.  Gray received several cancellations a week

in the month of March totaling over 50 policy cancellations and those cancellations are continuing.

81.     Similarly, EA Block has also been losing customers from his Allstate book of business that were previously serviced by Abrego.  Block also received over 50 cancellations in the month of March and those cancellations are continuing.

82.     Other EAs report losing business from the McCluskey Allstate Agency Book of Business at an alarming rate, noting that the cancellations were "out of pattern" with how customers typically cancel by cancelling shortly after making a payment to Allstate or after renewing their Allstate policies.

83.     Allstate continues to experience significant customer losses to McCluskey Insurance Services, LLC at unusually high rates.

84.     Defendants refused, and continue to refuse, to honor the duties and obligations they owe Allstate under the Allstate Agreements by, among other things, retaining and continuing to use Allstate confidential information; operating a competing business out of the *exact same* location; and soliciting Allstate customers.

85.     Thus, Defendants breached, and are breaching, Sections IV(B), XVIII(B) and (D) of the EA Agreement and Paragraphs 4, 5, 6, 7 and 9 of the Confidentiality Agreement.

**Defendants Misappropriated Allstate's Trade Secrets**

86.     Through their Allstate Agreements, Defendants were permitted access to Allstate confidential information and trade secrets, such as Allstate customers lists, customer contact and policy information, and other sensitive personal information about customers.

87.     Prior to termination of their Agreements and while they still had access to Allstate's proprietary systems, Defendants and/or employees of the McCluskey Insurance Agency download lists containing Allstate customer information.

88.     Upon information and belief, Abrego also retained a personal notebook wherein he kept confidential information about Allstate customers and their policies.

89.     Upon information and belief, Abrego and the other Defendants stored Allstate customer contact information on their personal phones and retained that information following termination of their Allstate Agreements.

90.     Not only is Defendants' retention of Allstate confidential information a blatant violation of their Allstate Agreements, Defendants' misconduct also violates federal and Ohio state laws.

## Irreparable Harm to Allstate

91.     By violating the Allstate Agreements, Defendants are harming Allstate's legitimate business interests by operating a competing business out of the same location; soliciting Allstate customers for the benefit of a competing insurance agency; and using Allstate confidential information misappropriated by Defendants to do so.

92.     Allstate's trade secrets, confidential information, and goodwill are at risk because Defendants are unfairly competing with Allstate and refusing to return Allstate property.

93.     Allstate has no adequate remedy at law, and unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Defendants' breaches of their Allstate Agreements and misappropriation of trade secrets in a manner that is not fully compensable by money damages.  Injunctive relief is appropriate considering Allstate's significant interest in its contracts, trade secrets and confidential information.

94.     Pursuant to the Allstate Agreements, Defendants acknowledge that "a breach of the [restrictive covenant] provisions will cause irreparable harm to the Company's business and that such damage is difficult or impossible to measure" and agrees that Allstate "will be immediately entitled to an order granting injunctive relief. . .  without the necessity of posting a bond."  (EA Agreement, § IV(F), XIX(F); Confidentiality Agreement ¶ 10).

95.     Accordingly, Allstate is suffering irreparable harm and a permanent injunction is appropriate.

### COUNT I
### Breach of Contract
**Against McCluskey Insurance, LLC and Keith Cameron McCluskey**

96.     Allstate repeats and realleges each and every allegation contained in Paragraphs 1 through 95 of the Verified Complaint, as if fully set forth herein.

97.     On August 1, 2015 and March 1, 2019, McCluskey Insurance entered into an EA Agreement with Allstate.  (EA Agreements, Gr. Ex. A).

98.     McCluskey is identified as the Key Person and Program Manager of McCluskey Insurance and obligated to provide services under the EA Agreement as well as bound by the terms of the EA Agreement.

99.     The EA Agreement terminated effective December 31, 2021.

100.     The EA Agreement is a valid and enforceable contract.

101.     Under the EA Agreement, McCluskey and McCluskey Insurance promised, for a period of one year following the termination of the EA Agreement, to not solicit the purchase of products competitive with those sold by Allstate to any person, company, or organization that McCluskey or McCluskey Insurance sold Allstate products to and whose identity was discovered as a result of their status as an Exclusive Agency and/or an Exclusive Agent.

81030110v.2

102.    Under the EA Agreement, McCluskey and McCluskey Insurance also agreed not to solicit or service competing products from "any office or business site within one mile of each Agency Sales Location(s)."

103.    Under the EA Agreement, McCluskey Insurance and McCluskey also promised, upon termination of the EA Agreement, to immediately return all property belonging to Allstate.

104.    McCluskey Insurance and McCluskey further promised not to use Allstate confidential information for any purpose other than carrying out the provisions of the EA Agreement.

105.    The post-termination covenants found in the EA Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and longstanding customer relationships.

106.    Allstate has performed all of the duties and obligations it owes McCluskey Insurance and McCluskey under the EA Agreement.

107.    McCluskey Insurance and McCluskey breached the EA Agreement, and continue to breach the EA Agreement, by, among other things, (1) operating a competing business out of the exact same location as the McCluskey Allstate Agency location; (2) misusing Allstate confidential information to solicit Allstate customers; (3) soliciting Allstate customers to whom they sold Allstate products and who were Allstate customers when the EA Agreement terminated; and (4) by refusing to return to Allstate all Allstate confidential information and property in their possession, custody and control.

108.    Allstate has incurred significant damage as a result of McCluskey Insurance and McCluskey's breaches of the EA Agreement.  McCluskey Insurance and McCluskey's illegal

operation of a competing business and solicitations and misuse of information have caused Allstate to lose customers and potential customers.

109.    McCluskey Insurance and McCluskey's illegal actions and breaches have also damaged Allstate's goodwill, reputation, and legitimate business interests.  Allstate's damages are in excess of $75,000.00.

110.    On or before December 31, 2021, McCluskey Insurance and McCluskey elected to take TPP in exchange for the economic interest in the customer accounts developed under the EA Agreement.

111.    Payment of TPP is contingent upon, among other things, McCluskey Insurance and McCluskey's compliance with the restrictive covenant and confidentiality obligations contained in the EA Agreement.

112.    As previously stated, McCluskey Insurance and McCluskey breached the EA Agreement by retaining and using Allstate confidential information and by violating the restrictive covenants.

113.    Due to McCluskey Insurance and McCluskey's breaches of the EA Agreement, Allstate is entitled to recover any of the TPP it paid to McCluskey Insurance and McCluskey.

114.    Following termination of the EA Agreement, Allstate agreed to pay McCluskey Insurance and McCluskey a total of $1,472,583.80 in TPP.

115.    On February 2, 2022, Allstate began paying TPP to McCluskey in monthly installments in the amount of $61,357.66

116.    Finally, McCluskey Insurance and McCluskey's breaches of the EA Agreement are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

81030110v.2

117.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by McCluskey Insurance and McCluskey's breaches of the EA Agreement in a manner that is not fully compensable by money damages.

118.    Allstate therefore requests that this Court grant injunctive relief against McCluskey Insurance and McCluskey that prohibits them from using Allstate confidential information.

119.    Allstate further requests that this Court order McCluskey Insurance and McCluskey to immediately return to Allstate all Allstate confidential information and property in the custody, possession, or control of McCluskey Insurance and McCluskey.

120.    Allstate further requests that this Court enjoin McCluskey Insurance and McCluskey from operating a competing business out of the their former Allstate location(s) and from soliciting Allstate customers until January 1, 2023.

121.    Finally, and pursuant to Sections IV(F) and XVIII(F) of the EA Agreement, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of McCluskey Insurance and McCluskey's breaches of the EA Agreement.

**COUNT II**
**Breach of Contract**
**Against Keith Cameron McCluskey, Terry Maples, Luis Abrego and Shanna Long**

122.    Allstate repeats and realleges each and every allegation contained in Paragraphs 1 through 121 of the Verified Complaint, as if fully set forth herein.

123.    On August 1, 2015 and  March 1, 2019, McCluskey executed a Confidentiality Agreements with Allstate.  (*See* Confidentiality Agreements, Gr. Ex. B).

124.    On May 8, 20217, Maples executed a Confidentiality Agreement with Allstate. (*See* Confidentiality Agreement, Ex. C).

125.    On or about November 13, 2019, Long became an LSP for the McCluskey Insurance Allstate Exclusive Agency after executing her Confidentiality Agreement. (*See* Confidentiality Agreement, Ex. D).

126.    On December 2, 2021, Abrego became an LSP for the McCluskey Allstate Exclusive Agency after executing his Confidentiality Agreement. (*See* Confidentiality Agreement, Ex. E).

127.    Prior to becoming an LSP in the McCluskey Agency, Abrego was an LSP in Exclusive Agents Victor Gray's and Don Block's Allstate Agencies, for which he also signed a Confidentiality Agreement with Allstate which terminated on or about August 1, 2021 and December 1, 2021, respectively. (*See* Confidentiality Agreements, Gr. Ex. F).

128.    The Confidentiality Agreement is a valid and enforceable contract.

129.    Under the Confidentiality Agreement, McCluskey, Maples, Abrego and Long promised that for a period of one year following the termination of their Confidentiality Agreement, they would not solicit the purchase of products or services competitive with those sold by Allstate to any person, company, or organization that they, McCluskey Insurance, and/or anyone working on behalf of the Allstate Exclusive Agency sold Allstate products to and who was an Allstate customer at the time the Confidentiality Agreement terminated.

130.    In addition, Abrego is also obligated not to solicit Allstate customers with whom he worked on behalf of other Allstate exclusive agents where his restrictive covenant periods pursuant to Confidentiality Agreements signed through those agencies have not yet expired.

131.    Under the Confidentiality Agreement, McCluskey, Maples, Abrego and Long also promised that for a period of one year following the termination of their Confidentiality Agreement, they would not solicit the purchase of products or services competitive with those

sold by Allstate from any office or business site located within one mile of any location from which McCluskey Insurance solicited or sold Allstate insurance or other products or services during the year immediately preceding the termination.

132.     Under the Confidentiality Agreement, McCluskey, Maples, Abrego and Long also promised that, upon termination of the Confidentiality Agreement, they would immediately return all property belonging to Allstate.

133.     McCluskey, Maples, Abrego and Long further promised to not use Allstate confidential information for any purpose other than carrying out the business of the Allstate agency.

134.     The post-termination covenants found in the Confidentiality Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and longstanding customer relationships.

135.     Allstate has performed all of the duties and obligations it owes McCluskey, Maples, Abrego and Long under the Confidentiality Agreement.

136.     McCluskey, Maples, Abrego and Long have breached the Confidentiality Agreement by, among other things, (1) using Allstate confidential information to solicit Allstate customers; (2) soliciting Allstate customers that were Allstate customers of McCluskey Insurance and the McCluskey Allstate Agency as well as other applicable Allstate exclusive agents and who were Allstate customers at the time their Confidentiality Agreement terminated; and (3) working for and/or operating a competing insurance business from the exact same location as the McCluskey Insurance Allstate Agency.

137.     Allstate has incurred significant damage as a result of McCluskey's, Maples', Abrego's and Long's breaches of their Confidentiality Agreement.  Specifically, Allstate has

suffered the loss of customers and potential customers.  Defendant's actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.  Allstate's above damage is in excess of $75,000.00.

138.    Moreover, McCluskey's, Maples', Abrego's and Long's breaches of their Confidentiality Agreements are continuing.  Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

139.    Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by McCluskey's, Maples', Abrego's and Long's breaches of the Confidentiality Agreement in a manner that is not fully compensable by money damages.

140.    Allstate therefore requests that this Court grant injunctive relief against McCluskey, Maples, Abrego and Long that prohibits them from accessing Allstate confidential information and from using Allstate confidential information.

141.    Allstate further requests that this Court order McCluskey, Maples, Abrego and Long to immediately return all Allstate property in their custody, possession or control.

142.    Allstate further requests that this Court enjoin McCluskey, Maples, Abrego and Long from selling or servicing competing products within one mile of any Allstate location from which they formerly worked and from soliciting Allstate customers until after January 1, 2023.

143.    Finally, and pursuant to Paragraph 10 of the Confidentiality Agreement, Allstate is entitled to recover the attorneys' fees and costs Allstate incurs as a result of McCluskey's, Maples', Abrego's and Long's breaches of the Confidentiality Agreement.

**COUNT III**
**Misappropriation of Trade Secrets and Violation of the Ohio Trade Secrets Act, R.C.**
**1333.61, *et seq.***
**Against all Defendants**

144.    Allstate repeats and re-alleges each and every allegation contained in Paragraphs 1 through 143 of the Verified Complaint, as if fully set forth herein.

145.    During the course of their relationship with Allstate, Defendants were exposed to substantial amounts of Allstate confidential information.

146.    For instance, they had access to: Allstate business plans; information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; and claim information.

147.    This information is not available to the general public and is closely guarded by Allstate.  Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain an advantage in the highly competitive insurance business.

148.    This information is considered a trade secret under the Ohio Uniform Trade Secrets Act ("OUTSA"), Ohio Rev. Code § 1333.61, *et seq*., because Allstate derives independent economic value from this information not being generally known to the public, the information is not readily ascertainable by proper means by persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

149.    The economic value of the Allstate trade secrets/confidential information McCluskey, Maples, Abrego and Long had access to under their Allstate Agreements is over $500,000.

150.     Under the OUTSA, "actual or threatened misappropriation [of trade secrets] may be enjoined."  Ohio Rev. Code § 1333.62.

151.     Defendants are misappropriating Allstate trade secrets by refusing to return Allstate property, including Allstate confidential information, and using that information to solicit Allstate customers.

152.     Defendants' refusal to return Allstate property, including Allstate confidential information, constitutes the "threatened" misuse of Allstate trade secrets and injunctive relief is therefore appropriate.

153.     Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Defendants' misappropriation in a manner that is not fully compensable by money damages.

154.     Accordingly, Allstate requests that this Court enter an order enjoining Defendants from using any Allstate confidential information and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

155.     Defendants' misappropriation of Allstate's trade secrets was willful and malicious.

156.     As a direct and proximate result of Defendants' misappropriation, Allstate requests an award of its compensatory damages, as well as exemplary damages and its reasonable attorneys' fees pursuant to Ohio Rev. Code § 1333.63.

## COUNT IV
### Violation of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*
### Against All Defendants

157.     Allstate repeats and realleges each and every allegation contained in Paragraphs 1 through 156 of the Verified Complaint, as if fully set forth herein.

26

158.     During the course of her relationship with Allstate, Defendants were provided access to substantial amounts of Allstate confidential information, including the confidential information identified in Paragraphs 31, 42, and 130.

159.     Allstate confidential information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

160.     Allstate confidential information is considered a "trade secret" under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business; the information is not generally known by employees and others involved in Allstate's business; Allstate has taken reasonable measures to guard the secrecy of the information; the information is of great value to Allstate and its competitors; Allstate invested significant amounts of time and money in developing the information; the information cannot easily be acquired or duplicated by others; and Allstate continuously uses the information in its business.

161.     Upon termination of their Allstate Agreements, Defendants were required to return Allstate confidential information to Allstate but refused to do so and, upon information and belief, still retain certain Allstate confidential information in their possession and/or control.

162.     Unless restrained, Defendants will use, divulge and/or otherwise misappropriate Allstate confidential information. Indeed, upon information and belief, Defendants have disclosed and used Allstate confidential information and trade secrets for the benefit of a direct competitor of Allstate.

163.     Defendants have used and are continuing to use Allstate confidential information in order to unfairly compete with Allstate.

27

164.    Defendants' continued possession and use of Allstate confidential information demonstrates that Defendants have no intention of complying with the terms of their Allstate Agreements or the law.

165.    Naturally then, Allstate requests an order enjoining Defendants from using any Allstate confidential information, and from disclosing Allstate confidential information to anyone not authorized to receive the confidential information.

166.    Allstate also requests an order requiring Defendants to return any and all Allstate confidential information still in their possession and/or control to Allstate, and compensatory damages arising from Defendants' illegal retention and/or use of Allstate confidential information.

167.    Finally, Defendants' misappropriation of Allstate confidential information has been willful and malicious, and Allstate has incurred significant damages as a result of Defendants' misappropriation of Allstate confidential information.

168.    Defendants' actions have damaged Allstate's goodwill, reputation, and legitimate business interests.

169.    Allstate is therefore entitled to compensatory and exemplary damages in an amount to be proven at trial, as well as reasonable attorneys' fees based on this cause of action.

**COUNT V**
**Tortious Interference with Business Relationships**
**Against all Defendants**

170.    Allstate repeats and realleges each and every allegation contained in Paragraphs 1 through 169 of the Verified Complaint, as if fully set forth herein.

171.    Until the events giving rise to this action, Allstate maintained a valid business and contractual relationship with its customers and prospective customers.

81030110v.2

172.    Many of the Allstate customers in the Allstate Book of Business serviced by Defendants were long time Allstate customers and Allstate reasonably expected those relationships to continue.

173.    As an Allstate Exclusive Agent, McCluskey was aware of the contractual and business relationships between Allstate and Allstate's customers, as well as Allstate's expectancy in developing relationships with potential customers.

174.    McCluskey knew and understood that Allstate's contractual relationship with its customers would continue after the EA Agreement terminated.

175.    As LSPs for the McCluskey Allstate Agency, Maples, Abrego and Long were aware of the contractual and business relationship between Allstate and Allstate customers, as well as Allstate's expectancy in its developing relationship with potential customers.

176.    McCluskey, Maples, Abrego and Long knew and understood that Allstate's contractual relationship with its customers would continue after termination of their Confidentiality Agreement.

177.    Notwithstanding their knowledge, Defendants intentionally and unjustifiably have and will continue to interfere with Allstate contractual and business relationships with its customers and/or prospective customers by using Allstate confidential information to solicit those customers in violation of the post-termination obligations set forth in the Allstate Agreements and through improper use of Allstate confidential information.

178.    Defendants' conduct is not privileged or justified.

179.    Allstate has incurred significant damages as a result of Defendants' interference with Allstate's contractual and business relationships.  Allstate has suffered the loss of customers

and potential customers. Defendants' actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.

180.    Defendants' conduct is willful and malicious.

181.    As a direct and proximate result of Defendants' tortious interference, Allstate has been damaged in an amount to be determined at trial and is entitled to recovery of punitive damages as well.

## COUNT VI
## Unfair Competition
## Against all Defendants

182.    Allstate repeats and realleges each and every allegation contained in Paragraphs 1 through 181 of the Verified Complaint, as if fully set forth herein.

183.    The above described activities demonstrate that Defendants are unfairly competing against Allstate, destroying goodwill, and providing Defendants with an unfair advantage in the marketplace.

184.    Defendants' misappropriation of Allstate confidential information and use that information to solicit Allstate customers within their restrictive covenant periods for the benefit of their competing insurance agency also constitutes unfair competition.

185.    Moreover, Defendants are intentionally intercepting unsuspecting Allstate customers for their competing business by operating out of the exact same location and using a nearly identify name to that of their former Allstate agency.

186.    Upon information and belief, Defendants breaches and misconduct began while they were still operating an Allstate Exclusive Agency.

187.    Defendants' acts of unfair competition were willful, malicious and intentional.

188.    As a result of Defendants' unfair competition, Allstate has been irreparably injured, and it continues to face irreparable injury. It is threatened with losing the value of its

confidential and proprietary information, competitive advantage, customer relationships, and goodwill, in amounts which may be impossible to determine and for which a remedy at law is inadequate. Accordingly, Defendants should be enjoined by Order of this Court.

189. In addition, Allstate seeks actual, exemplary, compensatory, and consequential damages based on Defendants' conduct in an amount to be determined at trial.

**WHEREFORE**, Plaintiff Allstate Insurance Company respectfully requests that this Court:

1. Enter an injunction enjoining and restraining Defendants, and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from using any Allstate confidential information for their own benefit and from disclosing Allstate confidential information to anyone not authorized to receive the information.

2. Enter an order requiring Defendants to return all Allstate confidential information in their possession, custody or control to Allstate;

3. Enter an injunction enjoining and restraining Defendants and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from soliciting Allstate customers until January 1, 2023;

4. Enter an injunction enjoining and restraining Defendants and their agents, representatives, associates, employees, and all those acting in concert or participation with them, from soliciting, servicing or selling insurance products that compete with Allstate from any location within one mile of their former Allstate locations until January 1, 2023;

5. Enter judgment against Defendants for compensatory damages in an amount to be determined at trial;

6. Enter judgment against McCluskey Insurance and McCluskey for reimbursement of the TPP paid by Allstate since February 2, 2022;

7. Enter judgment against Defendants for punitive damages in an amount to be determined at trial;

8. Award Allstate the costs and expenses, including reasonable attorneys' fees, Allstate incurs as a result of Defendants' breaches of their Allstate Agreements and pursuant to Ohio Rev. Code § 1333.61, *et seq.* and 18 U.S.C. §§ 1836, *et seq.*; and

9. Award Allstate such other relief as the Court may deem just and proper.

Dated: April 8, 2022                                    Respectfully submitted,

                                                       **Clark C. Crum**


                                                       By:  _s/ Clark C. Crum_____
                                                                    One of its attorneys

Clark C. Crum
Allstate Insurance Company
PO Box 2166
Hudson, OH 44236
380-222-5142
877-701-9904 (fax)
clark.crum@allstate.com

Kristine R. Argentine (*pro hac vice* forthcoming)
Illinois State Bar No. 6302850
kargentine@seyfarth.com
Tara Shinall (*pro hac vice* forthcoming)
Illinois State Bar No. 6339671
tshinall@seyfarth.com
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
Phone: 312-460-5000

*Attorneys for Plaintiff Allstate Insurance Company*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Cathleen Fouty, on behalf of Allstate Insurance Company declare under penalty of perjury that the statements set forth in the foregoing Verified Complaint for Injunctive and Other Relief are true and correct except as where such statements are made upon information and belief.

Dated: April 6, 2022

Cathleen Fouty

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of April, 2022, I presented the foregoing **Plaintiff's Verified Complaint** with the Clerk of the Court for filing and uploading to the CM/ECF system, which will send notification of such filing to the parties and counsel appearing in this matter.

_____*s/ Clark C. Crum*_____

33

81030110v.2